[Civ. No. 586. Fourth Appellate District.—October 20, 1931.]

In the Matter of the Estate of MARY LOUISE ROSS, Deceased. WM. H. ROSS et al., Respondents, v. CHARLES C. ROSS, Executor, etc., et al., Appellants.

Joseph Scott and R. Goer for Appellants.

Albert Launer and Harold A. McCabe for Respondents.

ALLISON, J., *pro tem.*—This is an action to revoke the probate of the will and codicils thereto of deceased, upon the grounds that the codicils in question were procured through the undue influence of Charles C. Ross and Sarah E. Ross, that the codicils in question were procured through the fraud of Charles C. Ross and Sarah E. Ross, and that the deceased was of unsound mind at the time of the execution of the codicils in question. A jury was impaneled to try the case.

It appears that on the fourteenth day of April, 1930, the deceased executed the last of three codicils to her will. At that time she was about seventy years of age. She died on the twenty-eighth day of May, 1930, at the home of her son Charles C. Ross and Sarah E. Ross, his wife, proponents and appellants herein. The deceased had lived in and near La Habra for approximately twenty-three years next preceding her death, and for about six months immediately prior to her death she had resided with her son Charles C. Ross and his wife. William H. Ross, one of the contestants, is also a son of the deceased. Dorothy Yvonne Louise Wilson, the other contestant, is a granddaughter of the deceased, the child of a deceased daughter. Up to the time of her death deceased was active in business, saw to the collection of her rents and was mentally keen on business propositions.

Prior to the execution of the codicil of April 14, 1930, proponent Sarah E. Ross, at the request of the deceased, called Mr. R. Goer, an attorney with whom the deceased was acquainted and who had on previous occasions at her request called at her home and consulted with her concerning her business affairs, to come to her home and prepare for her a new codicil. Mr. Goer went to the home of the deceased and proponents and appellants herein, and was instructed by the deceased concerning certain changes she desired to make in her will. Mr. Goer took with him a typewriter and there prepared the codicil and in the presence of friends who were present at her request to act as witnesses, read the codicil over to her several times and after being approved by her, it was executed. By the terms of the codicil in question Charles C. Ross and his wife take the bulk of the estate. The only material difference between this codicil and a codicil executed by the deceased on April 12, 1930, is that

Sarah E. Ross is named as an executrix in the event of the death of Charles C. Ross. On January 21, 1930, both the deceased and her husband, who was then living, made codicils to their respective wills, leaving their estate to the proponents and appellants. The will and codicils were kept in a safety deposit box owned by Charles C. Ross and his father. At the time of executing the codicil of April 14th, in referring thereto, the deceased stated: ''Now, these are the provisions just as I desire them. I have three legal heirs. To one heir I have willed one hundred dollars, to another heir I have willed one hundred dollars and the rest of the estate, according to my desire, goes to Charlie and Sadie Ross. They have taken good care of us since we have been in La Habra. They have been kind and generous to us. They ought to have all that is coming to them. . . . I will soon be before my Maker and my God and I want to leave everything just in the right way, according as I see that is right.'' On the twelfth day of April, 1930, said deceased executed a codicil in substantially the same form as the codicil of April 14th, except that she named Charles C. Ross as the sole .executor, and on the second day of January, 1930, said deceased executed a codicil in substantially the same form as the one in question, except as to certain phraseology concerning the property bequeathed, and again naming Charles C. Ross as the sole executor. After the death of Mrs. Ross the will and codicils were offered and admitted to probate. Thereafter a petition to revoke the probate thereof was filed by the contestants. Upon the trial of the case the court granted a motion for nonsuit as to the first and second grounds of contest, namely, that the codicils here in question were procured through the fraud of Charles C. and Sarah E. Ross, and that the deceased was of unsound mind at the time of the execution of the codicil in question, and withdrew those two issues from the jury, leaving as the only issue to be submitted to the jury the question whether or not the codicils had been procured by undue influence. On that issue the jury returned a verdict finding that the execution of the codicil of April 14, 1930, was procured by undue influence, and upon which verdict a judgment was entered revoking the probate thereof. In due time a motion for a new trial was made and by the court denied, and from said judgment proponents appeal.

It is contended that the court erred in refusing to grant proponents' motion for a nonsuit as to the third ground of contest, namely, that the codicil was procured by undue influence and that the evidence is insufficient to justify the verdict and judgment, and that the judgment is erroneous in awarding costs to respondents. The respondents insist that the circumstances surrounding the execution of the codicil in question show a sufficient activity on the part of the beneficiaries in the matter of the preparation and execution of the codicil, to create a presumption of undue influence sufficient to sustain the verdict and judgment. An examination of the evidence at once leads the unprejudiced mind to the conclusion that if the verdict is to be sustained, it must find its support in such presumptions as the facts and circumstances in this case may reasonably create. There is no direct testimony or any evidence of any kind of any pressure being brought to bear upon the testatrix which overpowered her mind or overcame her volition at the time the codicil was made, and unless the evidence can reasonably be said to have produced this result upon the will and volition of the testatrix, the verdict is without support in the record.

Our attention has been called to the fact that the deceased was living with the chief beneficiaries; that she was in poor bodily health; that she was being cared for by the proponents; that they were present at the execution of the codicil in question; and that the witness Goer had at some time been employed by the proponents in a professional capacity. It is to be borne in mind that the attorney as well as the witnesses were all called to the home of the testatrix by Sarah E. Ross at the request of the testatrix. Our attention has not been called to any act or word on the part of any of those present at the execution of the codicil, that is claimed or was intended to or did influence the testatrix in the disposition of her property. Stress is laid upon the unnatural feature of the will, in that Sarah E. Ross should be preferred over the blood relation of the testatrix. This, however, is not sufficient to establish undue influence unless there be an actual showing of the sort of pressure which overpowered the mind and mastered the volition of the testator at the moment of the execution. This is a well-settled general rule (*Estate of Baird,* 176

578

Cal. 381 [168 Pac. 561], and cases there cited). The undue influence which will avoid a will must be such as operates at the time of making the will, and also be an influence relating to the will itself (*Estate of Kilborn*, 162 Cal. 4 [120 Pac. 762]). ██ Assuming that there was a confidential relation existing between the testatrix and the proponents, this, in itself, would not be sufficient to raise a presumption of undue influence, in the absence of evidence of activity on the part of proponents (*Estate of Ricks*, 160 Cal. 450 [117 Pac. 532]). We are of the opinion that the evidence is insufficient to sustain the verdict and the judgment. In view of this conclusion, the order allowing respondents their costs should be reversed, the matter of awarding costs to await the final determination of the pending contest.

Judgment reversed and the cause remanded for new trial.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 10, 1931, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 17, 1931.